IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANITA BACA,**

      **Plaintiff,**

vs.                                                            No.  10cv0096 JCH/LFG

**STATE OF NEW MEXICO, OFFICE OF
THE SECRETARY OF STATE, and
MARY HERRERA,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** is before the Court on Defendants' Motion for Partial Judgment on the Pleadings **[Doc. No. 33]**, filed December 10, 2010, and fully briefed on February 3, 2011. Defendants move the Court for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant Herrera contends she is not liable as an individual under Counts I, II, III, IV and V. In addition, Defendants contend Counts IV, VI, VII, VIII and IX should be dismissed because Plaintiff fails to state causes of action in those counts. Finally, Defendants contend Plaintiff cannot recover punitive damages against a governmental entity. For the reasons set forth below Defendants' motion is **GRANTED** in part and **DENIED** in part.

**I.**        **STANDARD OF REVIEW**

      A motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standard applicable to a Rule 12(b)6) motion. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Thus, the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Park University Enters. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir.

2006). To survive Defendants' Rule 12(c) motion, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Park University Enterprises, Inc.*, 442 F.3d at 1244 (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).

In ruling on a Rule 12(b)(6) motion and by extension a Rule 12(c) motion, the court generally cannot consider matters outside the pleadings. However, the court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Similarly, Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). A motion to dismiss on grounds that the plaintiff has failed to exhaust administrative remedies is essentially a motion to dismiss for lack of subject matter jurisdiction. When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. *See Holt*, 46 F.3d at 1003 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987)).

Plaintiff does not have an issue with Defendants' Exhibits B, D, E, F, or G.  However, Plaintiff contends Defendants' Exhibits A, C, H, and I are not central to her claims and requests the Court either not consider them in ruling on the Rule 12(c) motion or convert the motion to a motion for summary judgment.  Pl.'s Resp. at 4 (Doc. No. 34).  The Court will not convert the Rule 12(c) motion into a motion for summary judgment.  The Court will not consider Defendants' Exhibits A, C and H or Plaintiff's Exhibit 1 attached to his response.  However, the Court will consider Defendants' Exhibit I along with Exhibits B, D, E, F, and G.  *See Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 802 (8th Cir. 2002)(concluding that an EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge.).  The Court will also consider Plaintiff's Exhibits 2 and 3, also attached to his response.

## II.    BACKGROUND

Defendant Herrera hired Plaintiff to work for Defendant Office of the Secretary of State as a Voting Machine Supervisor/Special Projects Coordinator on January 14, 2008.  Compl. ¶11. Plaintiff performed her job duties and responsibilities in at least a satisfactory fashion throughout the period of time relevant to her claims.  *Id.* ¶12.

Plaintiff's son Adam is permanently disabled due to a number of medical conditions, including severe rheumatoid arthritis, depression, polyarticular joint disease, and cervical spine instability.  *Id.* ¶13.  Plaintiff is Adam's designated non-medical caregiver and has a power of attorney to act on his behalf.  *Id.*  When Defendant Herrera hired Plaintiff, Defendant Herrera was aware that Plaintiff had a disabled son.  *Id.* ¶14.  Defendant Herrera had observed the nature and extent of Adam's disabilities.  *Id.*  In May 2008, Plaintiff wrote Defendant Herrera regarding

Adam's medical needs and requested she be placed into a classified position in order to better attend to Adam's medical needs. *Id.* ¶15.

In early 2009, Adam required more extensive care due to exacerbation of his disabilities. *Id.* ¶16. Plaintiff was responsible for Adam's care, including taking him to doctor's appointments, providing meals, cleaning, and generally overseeing and monitoring of his well-being. *Id.* ¶16.

Around the same time, in early January 2009, Defendant Herrera instituted a "blackout period" for the Office of the Secretary of State legislative team, including Plaintiff. *Id.* ¶17. Under the Office of the Secretary of State Policies & Procedures Handbook,

> The Secretary of State may impose annual and personal leave "Blackout Periods." This means that employees are not allowed to take annual or personal leave during specific dates as identified by the NM Secretary of State, except for reasons of an extreme emergency or due to being ill. Those blackout periods may be imposed for reasons such as, but not limited to: 1) the New Mexico Legislature annual scheduled sessions for either the 30-day session or the 60-day session; 2) when a special session is called by the Governor or NM State Legislature; 3) during an election or any other time as required by the Secretary of State's Office in order to assist members of the NM State Legislature and the public. Employees will be notified in advance via e-mail, memorandum and through their Immediate Supervisors. During a *Blackout Period*, Sick leave will require a doctor's justification in writing.

Defs.' Mot. J. Pleadings; Ex. B (Doc. No. 32-2).

During the blackout period, Defendant Secretary of State harassed and subjected Plaintiff to hostility because Plaintiff requested she be allowed to take time off to be with Adam due to medical and personal emergencies. Compl. ¶18. Defendant Herrera stated Plaintiff was "stubborn and hard-headed" when Plaintiff requested leave to take care of Adam. *Id.* ¶19. In addition, Defendant Herrera stated that if Plaintiff insisted on caring for Adam during the blackout period, then she should bring in a letter of resignation. *Id.* Other employees who took time off during the blackout period were not subjected to the same treatment. *Id.* ¶18.

4

On February 13, 2009, Plaintiff sent Defendant Herrera an email requesting she be permitted to go to California to care for Adam and his family at the end of February through the beginning of March. *Id.* ¶20. Plaintiff informed Defendant Herrera that Adam's wife, who is disabled, also needed care as she had delivered a baby girl via Caesarean section. *Id.*

On February 16, 2009, Plaintiff submitted a leave request form, requesting leave from February 27 through March 2, 2009. *Id.* ¶21. As grounds for her leave request, Plaintiff stated she needed to care for Adam due to a worsening of his condition following the birth of his daughter. *Id.* Don Francisco Trujillo, the Deputy Secretary of State, required Plaintiff to bring in medical documentation from Adam's physician confirming that emergency medical leave was medically justified. *Id.* Juliet Coquia, M.D., Adam's physician, provided the following February 24, 2009 medical statement:

> This letter is in regards to Anita Baca. Ms. Baca is the mother of my patient, Adam Lee Baca. Adam is a 33-year-old male with a long-standing history of rheumatoid arthritis. His rheumatoid arthritis is associated with multiple joint deformities, multiple joint replacements and cervical instability. Due to the nature of his disease, he has difficulty with some of day-to-day activities and daily care. He may need the assistance of his mother to help with some [of] his activities of daily living. I am asking if his mother can be excused when needed during the legislative session to help take care of her son.
>
> Should you have any other questions regarding this matter, please do not hesitate to contact our office.

Defs.' Mot. J. Pleadings; Ex. D (Doc. No. 32-4); Compl. ¶23. Nonetheless, Defendant Herrera denied Plaintiff's leave request because Dr. Coquia's medical statement did not indicate it was an emergency situation. Compl. ¶21. However, on February 17, 2009, Defendant Herrera approved a leave request for Plaintiff to take personal leave days on March 27 and 31. *Id.* ¶22.

On February 26, 2009, Plaintiff submitted another request for emergency leave to care for Adam for February 27 and March 2, 2009. *Id.* ¶24. Defendant Herrera did not approve this leave.

*Id.* However, Deanna Fresquez, a Secretary of State Human Resources employee, notified Plaintiff on March 9, 2009, that Plaintiff was docked annual leave for the two dates she requested. *Id.* This decision was due to the "non-emergency medical documentation attached to the leave request." *Id.*

On February 27, 2009, at approximately 6:00 a.m., Defendant Herrera telephoned Plaintiff at home and asked her if she was on a plane to California. *Id.* ¶25. Plaintiff informed Defendant Herrera she feared losing her job if she left for California to care for Adam. *Id.* Defendant Herrera told Plaintiff she could go to California. *Id.* Therefore, Plaintiff took leave on February 27 and March 2 and traveled to California to attend to Adam. *Id.* ¶26. However, Plaintiff was concerned that she was threatened with loss of employment. *Id.*

When Plaintiff returned from California, on March 3, 2009, she sent Defendant Herrera a letter/email and also addressed it to Don Francisco Trujillo, regarding the unprofessional manner in which her February leave requests had been handled. Compl. ¶28. Plaintiff also complained to Defendant Herrera that she felt she was being singled out and treated unfairly. *Id.*

On the same day, Plaintiff met with Deanna Fresquez to discuss different forms of leave available to her for the purpose of caring for Adam. *Id.* ¶29. At this time, no one at the Office of the Secretary of State had discussed the Family and Medical Leave Act (hereinafter "FMLA") with her. *Id.* Plaintiff inquired about the FMLA. Ms. Fresquez provided Plaintiff the FLMA forms. *Id.* Plaintiff took these forms to Dr. Coquia on March 4, 2009. *Id.* ¶30.

On March 5, 2009, Ms. Fresquez called Plaintiff to a meeting. *Id.* ¶31. Ms. Fresquez scolded Plaintiff for sending the March 3, 2009 letter/email to Defendant Herrera. Ms. Fresquez stated to Plaintiff that Defendant Herrera was upset over the contents of the email. *Id.* Ms. Fresquez also stated Defendant Herrera was dissatisfied with Plaintiff's job performance. *Id.* This was the first time Plaintiff was notified about her job performance. Plaintiff felt Defendant Herrera was

merely upset about Plaintiff's claim that Defendant Herrera had violated Plaintiff's rights. *Id.* Ms. Fresquez also notified Plaintiff that Defendant Herrera intended to remove Plaintiff from her position and advised her to begin looking for another job. *Id.* ¶32. Ms. Fresquez informed Plaintiff that the decision to terminate her was made on March 3, 2009. *Id.* This termination date was later changed to March 31, 2009. *Id.* Ms. Fresquez also informed Plaintiff that her last day of employment would be April 3, 2009. *Id.*

On March 5, 2009, Dayana George-Lucero, M.D., one of Adam's physicians, provided Plaintiff with a letter in support of her FMLA request. Compl. ¶33. Dr. Lucero's letter stated "Adam required assistance with many of his physical needs" and it was important that Plaintiff be available to provide "assistance as needed." *Id.* ¶33. On March 9, 2009, Plaintiff returned the completed FMLA forms to Ms. Fresquez. *Id.* ¶34. However, Plaintiff's FMLA request was not processed until a week prior to her separation from the Office of the Secretary of State. *Id.* ¶35.

On March 10, 2009, Plaintiff met with Ms. Fresquez. *Id.* ¶36. Ms. Fresquez was hostile during the meeting and told Plaintiff that she was not a good fit at the Office of the Secretary of State. *Id.* Ms. Fresquez also told Plaintiff that she needed to apologize to Defendant Herrera and that Ms. Fresquez did not want to deal with Plaintiff. *Id.* When Plaintiff requested to see her personnel file, Ms. Fresquez told her to hire an attorney if she wanted to see her personnel file. *Id.* Plaintiff contends Ms. Fresquez acted inappropriately toward her throughout the remainder of her employment. *Id.*

On March 13, 2009, Plaintiff requested leave to attend an appointment and job search. *Id.* ¶38. Defendant Herrera denied the request. *Id.* Plaintiff then requested she be allowed to use her comp hours to cover her absence, but Defendant Herrera again denied the request. *Id.* As a consequence, Plaintiff lost all of her comp hours without reimbursement. *Id.*

On March 17, 2009, Plaintiff requested she be permitted to see her physician because of health issues resulting from the work environment. *Id.* ¶39. Defendant Herrera informed Plaintiff that any time off would have to be requested in advance and constitute an emergency. *Id.* Plaintiff went to see her physician who recommended she take time off work to begin therapy to deal with uncontrolled hypertension and other health issues. *Id.* Ms. Fresquez told Plaintiff she would be checking all of Plaintiff's medical appointments to verify they were necessary. *Id.* As a result of this harassment and treatment and per her physician's orders, Plaintiff had to take off on March 19 and 20.

During the second half of March 2009, Ms. Fresquez and Diane Brown, both Human Resources employees of the Office of the Secretary of State, had unauthorized communications with Adam's healthcare providers. *Id.* ¶42. Both requested a diagnosis, prognosis, and other information related to Adam's disabilities. *Id.* Defendant Herrera has admitted in writing that these communications took place. This confidential information was shared in areas where other employees overheard the conversations. *Id.*

In addition, during the second half of March 2009, Plaintiff took Adam to numerous doctor's appointments and also provided him with general care. *Id.* ¶43.

On March 18, 2009, Plaintiff's work computer was shut off. Compl. ¶41. On March 24, 2009, Plaintiff's work cellular telephone was shut off. *Id.* ¶45. Plaintiff contacted Ms. Fresquez and provided her with contact information. *Id.*

On March 26, 2009, Defendant Herrera finally approved Plaintiff's FMLA request. *Id.* ¶46. Ms. Fresquez's letter approving the FMLA request contained misrepresentations of fact and lies. *Id.*

**III.   DISCUSSION**

Plaintiff brought this action against Defendants pursuant to the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C.A. §§ 12111–12117, and the FMLA, 29 U.S.C. §§2601-2654. Under the ADA, Plaintiff alleges (1) association discrimination in Count I; (2) retaliatory action in Count II; and hostile work environment in Count III. Under the FMLA, Plaintiff alleges interference with her FMLA rights in Count IV and retaliation for requesting FMLA leave in Count V. Additionally, Plaintiff alleges state law claims of prima facie tort (Count VI), breach of implied contract of employment (Count VII), retaliatory discharge (Count VIII), and breach of implied covenant of good faith and fair dealing (Count IX).

Defendant Herrera contends Plaintiff cannot maintain any causes of action against her and makes the following arguments: (1) Plaintiff's complaint does not clarify whether she is suing Defendant Herrera in her official capacity as Secretary of State or in her individual capacity or both; (2) Plaintiff's complaint fails to state whether Plaintiff is pursuing her discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 or the ADA and the FMLA; (3) Plaintiff has not exhausted her administrative remedies against Defendant Herrera; (4) Defendant Herrera is not an "employer" under the FMLA and is thus not individually liable; (5) Defendant Herrera is entitled to qualified immunity; and (6) the FMLA does not apply when an employee is requesting FMLA leave for the birth of a grandchild. Defs.' Mot. J. Pleadings at 6-9 (Doc. No. 32).

The Court can summarily dispose of Defendant Herrera's first, second, third and sixth arguments. First, in her response, Plaintiff clarifies she is suing Defendant Herrera in her individual capacity. Pl.'s Resp. at 8 (Doc. No. 34). Second, it is abundantly clear from the complaint that Plaintiff brought this action under the ADA and the FMLA, and she specifically cites those statutes in the heading of each of Counts I through V. Third, citing to *Kelley v. City of Albuquerque*, 375 F.Supp.2d 1183 (D.N.M. 2004), Defendant Herrera contends Plaintiff did not exhaust her

9

administrative remedies against her "because Plaintiff's charge of Discrimination names only 'NMSOS' as a respondent" and not Defendant Herrera.[1] *Id.* at 6.  However, *Kelley* simply does not apply to any of the facts or issues in this case.  Moreover, in her Charge of Discrimination, Plaintiff listed "Secretary of State" as the respondent not the office of "NMSOS" as Defendant Herrera claims.  *See* Defs.' Mot. J. Pleadings; Ex. I (Doc. No. 32-9).  At the time of the filing of Plaintiff Charge of Discrimination, Defendant Herrera was the Secretary of State.  Accordingly, Plaintiff adequately exhausted her administrative remedies as to Defendant Herrera.  Finally, Defendant Herrera's claim that Plaintiff requested FMLA leave for the birth of her grandchild and was thus not covered by the FMLA fails.  Accepting Plaintiff's factual allegations as true and viewing them in the light most favorable to Plaintiff, Plaintiff alleges that she requested FMLA leave to care for her disabled son, not her grandchild.  The FMLA would thus apply to Plaintiff's FMLA leave request.

### A.     Individual Capacity Suit Against Defendant Herrera Under the FMLA

Defendant Herrera claims she does not qualify as an employer under the FMLA.  Defs.' Reply at 2 (Doc. No. 35).  Accordingly, Defendant Herrera contends she is not liable in her individual capacity for any alleged violations of the FMLA and thus Courts IV and V must be dismissed.

#### 1. Whether Defendant Herrera is an "Employer" for Purposes of the FMLA

The FMLA provides, in relevant part:

---

[1] In her response, Plaintiff argues "[t[here is no exhaustion requirement before an administrative agency prohibiting the filing of FMLA claims in this court."  Pl.'s Resp. at 8 (Doc. No. 34).  Plaintiff misconstrues Defendant Herrera's failure-to-exhaust argument.  Defendant Herrera is alleging that Plaintiff failed to exhaust her administrative remedies as to her ADA claims.  In fact, in her reply, Defendant Herrera states, "Counts I, II, and II (all of which are based on alleged discrimination in violation of the Americans with Disabilities Act) must be dismissed as to Ms. Herrera.  Defs.' Reply at 2 (Doc. No. 35).

10

> The term "employer"–
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current and preceding calendar year;
>
> (ii) includes–
>
> > (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> > (II) any successor in interest of an employer;
> > (III) includes any "public agency", as defined in section 203(x) of this title; and
> > (IV) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. §2611(4)(A). The FMLA plainly includes in the definition of employer "**any** person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. §2611(4)(A)(ii)(I)(emphasis added). Moreover, the FMLA includes public agencies as employers. 29 U.S.C. §2611(4)(A)(iii). Therefore, if a public employee, in this case Defendant Herrera, "acts directly or indirectly, in the interest of an employer"—in this case, the State of New Mexico Office of the Secretary of State—she satisfies the definition of employer under the FMLA and may be subject to liability in her individual capacity.

In *Saavedra v. Lowe's Home Center, Inc.*, 748 F.Supp.2d 1273, 1291-96 (D.N.M. 2010), the Honorable James O. Browning, after finding that the plaintiff had pled sufficient facts to demonstrate that defendant qualified as an employer under the FMLA, concluded that the FMLA "provides for individual liability." *Id.* at 1296. Judge Browning acknowledged that "[t]he Tenth Circuit has yet to address whether there is individual liability under the FMLA" but noted that "a majority of courts that have confronted the issue have found that individuals may be held liable as 'employers' under the statute." *Id.* at 1292. The Court finds Judge Browning's analysis on this

issue thorough, well-reasoned and persuasive. Accordingly, the Court adopts Judge Browning's comprehensive and well-reasoned analysis and find that the FMLA provides for individual liability. *See also Modica v. Taylor*, 465 F.3d 174, 183-87 (5th Cir. 2006)(concluding that the plain language of the FMLA permits public employees to be held individually liable on the basis that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA and thus decisions interpreting the FLSA offered the best guidance for construing the term 'employer' as it is used in the FMLA.); *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002)(same).

### 2. **Qualified Immunity**

Qualified immunity protects a government official performing discretionary functions from liability for civil damages as long as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in his position would have known. *Harlow v. Fitzgerald*, 457 U.S. 808, 818 (1982). Stated another way, "[q]ualified immunity is a judicially-created defense that shields public officials from civil liability based on having acted in good faith in the exercise of their duties." *Gray v. Baker*, 399 F.3d 1241, 1245 (10th Cir. 2005)(citing *Harlow*, 457 U. S. at 815-19). Defendant Herrera contends she "has qualified immunity for her actions taken in her official capacity." Defs.' Mot. J. Pleadings at 7 (Doc. No. 32). However, Plaintiff is not suing Defendant in her official capacity nor is qualified immunity available as a defense to official capacity claims, and therefore this argument fails. *See Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005) ("A qualified immunity defense is only available to parties sued in their individual capacity." (citation omitted)). Defendant Herrera also contends she is entitled to qualified immunity because "Plaintiff has not alleged and cannot establish a violation of any constitutional right." *Id.* at 8. While it is true that Plaintiff is not alleging a violation of her constitutional rights, she is, however, alleging a violation of her statutory rights under the FMLA, and therefore the qualified

immunity defense may be available to Defendant Herrera. *See, e.g., Gray*, 399 F.3d at 1246 ("[D]efendants have never asserted a true qualified immunity defense to the FMLA claims asserted against them, i.e., they have never asserted that they should be shielded from liability because they acted in good faith in interpreting and applying the FMLA to plaintiff Gray's situation.'"). Accordingly, based on the arguments Defendant Herrera put forward, the Court denies Defendant Herrera's motion for qualified immunity at this time.

### B.      Prima Facie Tort

In Count VI, Plaintiff alleges a claim of prima facie tort against Defendants. Compl.¶¶79-84. The elements of prima facie tort are (1) an intentional, lawful act, (2) committed with the intent to injure the plaintiff, (3) causing injury to the plaintiff, and (4) the absence of justification for the injurious act. *Vigil v. Pub. Serv. Co. of N.M.*, 136 N.M. 70, 73, 94 P.3d 813, 816 (Ct.App. 2004). Defendants argue they are immune from liability from this particular tort because immunity has not been waived by the New Mexico Tort Claims Act. The Court agrees.

"Governmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act." *Derringer v. State*, 133 N.M. 721, 725, 68 P.3d 961, 965 (Ct. App. 2003). Plaintiff does not dispute that Defendant Office of the Secretary of State is a governmental entity or that Defendant Herrera is a public employee. Therefore, because prima facie tort is not included in the specific waivers of immunity contained in the Tort Claims Act, Defendants are immune from claims of prima facie tort. *Id.* (citing to N.M. Stat. Ann. §§ 41-4-5 to -12 (1976)).

### C.      Contract Claims

Defendant Office of the Secretary of State contends Plaintiff cannot maintain her claims for (1) retaliatory discharge, (2) breach of an implied contract, and (3) breach of an implied covenant

of good faith and fair dealing against it because, as a governmental entity, it is immune from liability for these claims. Defendant claims it is "immune from actions based upon a contract, except where the action is based on a valid *written* contract." Defs.' Mot. J. Pleadings at 10 (Doc. No. 32)(citing N.M. Stat. Ann. 37-1-23(A)). Therefore, Defendant argues that because Plaintiff is an at-will employee there is no written contract and thus it is immune under Section 37-1-3(A).

Section 37-1-23(A) states, in relevant part: "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." N.M. Stat. Ann. §37-1-23(A). In the context of employment, "absent an express employment contract that limits the ability of an employer to discharge his or her employee, the employer or the employee may terminate the relationship for good cause, for no cause or even for cause morally wrong, without thereby being guilty of legal wrong." *Silva v. American Federation of State, County and Municipal Employees*, 131 N.M. 364, 366, 37 P.3d 81, 83 (2001)(internal quotations omitted). New Mexico recognizes "breach of implied contract and retaliatory discharge as two exceptions to this doctrine and has rejected a third– the implied covenant of good faith and fair dealing." *Id.*; *see also Henning v. Rounds*, 142 N.M. 803, 808, 171 P.3d 317, 322 (Ct. App. 2007)("While our courts 'do not recognize breach of an implied covenant of good faith and fair dealing as a cause of action in New Mexico in at-will employment relationships, we have recognized breach of an implied covenant of good faith and fair dealing in employment arrangements that are not at-will.'"). "Whether an implied employment contract exists is a question of fact, and it may be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Garcia v. Middle Rio Grande Conservancy District*, 121 N.M. 728, 731, 918 P.2d 7, 10 (1996). In *Garcia*, the New Mexico Supreme Court

14

determined that Section 37-1-23(A) waives governmental immunity for alleged breaches of both valid written contracts and implied employment contracts. *Id.* at 732, 918 P.2d at 11.

In her complaint, Plaintiff alleges that an implied contract exists where Defendant Secretary of State "compiled and published an Employee Policies and Procedures Handbook (hereinafter "Handbook") which contained policies and procedures that its employees were required to follow." Compl. ¶86. Under the Handbook's policies and procedures, an employee could be disciplined, up to and including termination. *Id.* ¶87. The Handbook further provides for a Code of Ethics which governs the employer-employee relationship. *Id.* ¶88. Plaintiff also alleges that Defendant Office of the Secretary of State maintains policies and procedures governing requests for leave. *Id.* ¶89.

Applying the standard set forth in *Twombly*, the Court finds that Plaintiff has pleaded sufficient facts to support her breach of implied contract and retaliatory discharge claims. Accordingly, the Court will deny Defendant the Office of the Secretary of State's motion to dismiss these claims. However, the Court will grant the motion to dismiss as to Plaintiff's breach of an implied covenant of good faith and fair dealing.

### D. **Punitive Damages**

Defendants contend "[p]unitive damages are not recoverable against governmental entities under 42 U.S.C. §1983 or Title VII." Defs.' Mot. J. Pleadings at 12 (Doc. 32). Because Plaintiff did not bring this action pursuant to §1983 or Title VII, the argument is moot and the Court will not address it. Defendant Herrera also contends Plaintiff is not entitled to punitive damages under the FMLA because she cannot be sued in her individual capacity under the FMLA.

Punitive damages are not recoverable under the FMLA, though the statute does provide for recovery of certain liquidated damages. Section 2617 specifies, in relevant part.

(1) Liability

15

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
>
> (A) for damages equal to--
>
> (i) the amount of--
>
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
>
> (ii) the interest on the amount described in clause (i) calculated at the prevailing rate;
>
> and
>
> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and
>
> (B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. 2617(a)(1). "[R]ecovery is thus unambiguously limited to actual monetary losses" therefore courts have consistently refused to award FMLA recovery for other claims. *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001). In *Saavedra v. Lowe's Home Center, Inc.,* Judge Browning concluded that "[t]he canons of statutory construction support the conclusion that the FMLA does not provide for punitive damages." 748 F.Supp.2d 1273, 1298 (D.N.M. 2010). Accordingly, the Court will grant Defendant Herrera's motion to dismiss Plaintiff's claims for punitive damages under the FMLA.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Judgment on the Pleadings **[Doc. No. 33]** is **DENIED** in part and **GRANTED** in part.  Defendants' motion for partial judgment on the pleadings as to Count I, Count II, Count III, Count IV, Count V, and Count VII is **DENIED**.  Defendants' motion for partial judgment on the pleadings as to Counts VI, Count IX, and Plaintiff's prayer for punitive damages under the FMLA is **GRANTED.**

    **JUDITH C. HERRERA**
    **UNITED STATES DISTRICT JUDGE**