IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANITA BACA and
MICHAEL J. CAPLAN, the
Chapter 7 trustee for the
bankruptcy estate of ANITA BACA,

      Plaintiffs,

vs.                                              No.  10cv0096 JCH/LFG

STATE OF NEW MEXICO, OFFICE OF
THE SECRETARY OF STATE, and
MARY HERRERA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss or for Summary Judgment [Doc. No. 51].  Defendants move the Court for entry of judgment in their favor pursuant to Federal Rules of Civil Procedure 56 and 17.  Alternatively, Defendants move the Court for an order dismissing Plaintiff Anita Baca ("Baca") for lack of standing and substituting the bankruptcy trustee as the real party in interest pursuant to Rule 17.  Baca does not oppose the request to substitute the bankruptcy trustee for her in this lawsuit.  For the reasons set forth below, the Court will deny Defendants' Motion for Summary Judgment, deny Defendants' motion to dismiss the action pursuant to Rule 17(a), and substitute the bankruptcy trustee for Baca.

## FACTS

The Court set forth the facts of this case in detail in its September 30, 2011 Memorandum Opinion and Order (Doc. No. 60).  Accordingly, the Court will not repeat them here and will set

forth only the material facts relevant to Defendants' present motions. In support of their motion for summary judgment, Defendants submitted the following undisputed material facts.

On May 19, 2009, Baca commenced an administrative action with the Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging Defendants had discriminated against her. Defs.' Mot. Summ. J. (Doc. No. 52); Ex. A (Charge of Discrimination). On November 9, 2009, the EEOC issued a Dismissal and Notice of Rights to Baca and to Michael Mozes, Baca's counsel in the administrative proceeding and in this action. *Id.;* Ex. B (Dismissal and Notice of Rights). The notice indicated the EEOC was unable to conclude that the information obtained established violations of the statutes. *Id.* The notice also informed Baca of her right to file a lawsuit within ninety (90) days of her receipt of the notice. *Id.*

On November 5, 2009, Baca filed a Petition for Bankruptcy. *Id.*; Ex. C. Christopher L. Trammell represented Baca in the bankruptcy proceeding. On December 7, 2009, Baca filed her Bankruptcy Schedules which list her debts and creditors with the bankruptcy court. *Id.*; Ex. D (Declaration of Filing) & Ex. E (Bankruptcy Schedules). In addition, Baca filed a Statement of Financial Affairs. *Id.*; Ex. F (Statement of Financial Affairs). Section 4 of the Statement of Financial Affairs required Baca to list all suits and administrative proceedings to which Baca "is or was a party" within one year immediately preceding the filing of her Bankruptcy Petition. *Id.*; Ex. F. Baca listed a 2009 civil case in which she was a party, but she failed to list her EEOC administrative proceeding against the Defendants. Baca declared under penalty of perjury that her Statement of Financial Affairs was true and correct.

On December 7, 2009, Baca met with Michael Caplan, Trustee, for a required creditor's meeting. Mr. Caplan examined Baca under oath pursuant to the Bankruptcy Code. *Id.*; Ex. G (Notice of Creditor's Meeting). Mike Lash represented Baca at this proceeding. *Id.*; Ex. H

(Unofficial Transcript of 341 Creditor Meeting). Under oath, Baca swore her Schedules were true and correct. *Id.*; Ex. H (Unofficial Transcript of 341 Creditor Meeting). Mr. Caplan specifically asked Baca if she had "any reason to sue anyone for any cause of action" *Id.* Baca responded "No." *Id.*

On February 4, 2010, Baca filed her Complaint against the Defendants in federal court. Compl. (Doc. No. 1). On March 2, 2011, Baca filed an Unopposed Motion to Join Party Plaintiff (Doc. No. 48). In her motion, Baca acknowledged she did, in fact, have a reason to sue Defendants in this case and that the accrual dates for the claims and allegations occurred in March 2009.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248, 106 S.Ct. 2505, 2510 (1986). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant. *Berry & Murphy P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson*, 477 U.S. at 247-48, 106 S.Ct. at 2509-10. The Court will consider Defendants' motion for summary judgment in light of these standards.

## DISCUSSION

### I. Motion for Summary Judgment

Rule 17(a) of the Federal Rules of Civil Procedure provides, in relevant part, "An action must be prosecuted in the name of the real party in interest. . . . The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Defendants contend they are entitled to summary judgment based on Rule 17(a) because there is no genuine issue as to any material fact they presented in support of their motion. Specifically, they contend that plaintiff intentionally hid her claim against them from the bankruptcy trustee by failing to list it as an actual or potential legal claim on her Statement of Financial Affairs to by neglecting to mention it to Mr. Caplan at the December 7, 2009 creditor's meeting. Defendants' entire argument in support of their summary judgment motion is that "there are no reasonable disputes about [the facts Defendants presented], and the facts are capable of accurate and ready determination by resort to the pleading and information provided." Defs.' Mot. Summ. J. at 5 (Doc. No. 52).

Baca filed an affidavit disputing Defendants' assertion that she intended to deceive or that she sought any advantage by not disclosing the pending EEOC charge at the time of the filing of her Bankruptcy Petition and other related documents.  Pl.'s Resp.; Ex. A (Baca Aff.).  In her affidavit, Baca attests to the following facts: (1) she is unfamiliar with bankruptcy law; (2) she filed her petition for bankruptcy without knowing it would have any effect on the claims brought forward in this lawsuit; (3) she disclosed a then-pending lawsuit in which she was a party, but she did not know she had to include the EEOC charge because she believed she only had to disclose lawsuits that had been filed in a court; and (4) in December of 2010, Mr. Mozes learned that plaintiff had filed for bankruptcy, and he counseled her as to her mistake in not including the EEOC charge in the schedules filed with her bankruptcy petition.  Baca Aff. ¶¶2-6.  After she became aware of the mistake, Baca contacted Mr. Trammell and re-opened the bankruptcy in order to include this lawsuit in an amended schedule.  Baca Aff. ¶7.

Although the facts and supporting documents establish that Baca did not disclose her pending EEOC charge at the time of the filing of her bankruptcy petition and schedules, the Court cannot infer from the evidence that Baca intended to deceive or that she consciously concealed her potential lawsuit against Defendants in a deliberate tactical maneuver.  Moreover, in examining the factual record, the Court draws "reasonable inferences therefrom in the light most favorable to the non-moving party."  *Simms v. Oklahoma,* 165 F.3d 1321, 1326 (10th Cir. 1999).  Baca's affidavit creates a genuine issue of material fact in this case.  A jury could find either that Baca intentionally concealed the pending EEOC charge when she filed her Bankruptcy Petition and schedules, or it could find that Baca reasonably believed she did not have to list the pending EEOC charge because it had not matured into a lawsuit.  Because a genuine issues of material fact exists, summary

judgment is precluded. Accordingly, the Court will deny Defendants' motion for summary judgment.

## II. Motion to Dismiss In Accordance With Federal Rule of Civil Procedure 17

Alternatively, Defendants move the Court for dismissal of Baca's claims pursuant to Rule 17(a). If the Court does not grant dismissal of the action, then Defendants move the Court for an order substituting the bankruptcy trustee as the real party in interest and dismissing Baca for lack of standing. Baca does not object to substitution of the bankruptcy trustee.[1]

Rule 17(a) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. FED. R. CIV. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* "Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application." *Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004); *see also Garcia v. Hall*, 624 F.2d 150, 151 n.3 (10th Cir. 1980) ("The purpose of [Rule 17(a)] is to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.").

In determining whether to permit substitution rather than dismissing an action under Rule 17(a), the Court "focus[es] primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced

---

[1] On March 4, 2011, the Court granted Baca's unopposed motion to add Mr. Caplan to the case as a plaintiff. Doc. No. 49. Apparently, Defendants now request that Plaintiff Anita Baca be removed entirely and that the Trustee replace her as the sole plaintiff.

thereby." *Esposito*, 368 F.3d at 1276.  Where a mistake in naming the correct party is "honest," there is no additional requirement that the mistake also be "understandable."  *Id.* at 1276-77.

Defendants contend Baca's failure to list her pending causes of action against Defendants in her bankruptcy proceeding and her failure to include the bankruptcy trustee in this action were not an honest mistake but rather "an act of deliberate tactical maneuvering and conscious concealment." Defs.' Mem. Support Mot. at 7 (Doc. No. 52).  Moreover, Defendants contend they were prejudiced by Baca's actions.  Accordingly, Defendants contend dismissal of Baca's action is warranted.  In support of their position, Defendants raise the following points: (1) Baca was aware of her claims against them when she filed her Bankruptcy Petition; (2) Schedule B of Baca's Bankruptcy Schedules contain a section expressly questioning Baca regarding whether she had other "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," yet she responded she had no such claims;  (3) the Statement of Financial Affairs of her Bankruptcy Schedule requires Baca to list all suits and administrative proceedings to which Baca is or was a party within one year immediately preceding the filing of this bankruptcy case, yet Baca did not list the EEOC action or the current  lawsuit; and  (4) at the creditor's meeting the Trustee questioned Baca under oath regarding her bankruptcy schedules, and Baca stated her Bankruptcy Schedules were true and correct even though she had not listed her claims against Defendants.

Defendants cite *Feist v. Consolidated Freightways Corp.* 100 F. Supp. 2d 273 (E.D. Pa. 1999) and *Griffin v. EFW, Inc.*, 2004 WL 906393 (N.D. Tex. 2004) (unpublished) in support of their motion to dismiss.  Defendants argue that the facts in this case are similar to the facts in *Feist* and *Griffin.* In *Feist* and *Griffin*, the district courts found that the plaintiffs' failure to list their claims

against defendants in their bankruptcy proceedings were not due to honest mistakes and therefore granted defendants' motions to dismiss.

In *Feist*, the district court placed great weight on the timing of particular events. Plaintiff was injured at his place of employment on April 23, 1995. On July 21, 1997, plaintiff filed a complaint in federal district court against defendant based upon the injuries he sustained on August 23, 1995. Trial was set for July 6, 1998. However, in May 1998, defendant became aware that plaintiff had filed a bankruptcy petition in 1997. Discovery revealed that on January 16, 1997, plaintiff filed a Chapter 7 Petition in Bankruptcy but did not list his claims against defendant. In addition, plaintiff denied he had any claims against anyone for any reason "whatsoever" when questioned by the trustee at the meeting of creditors. On April 30, 1997, plaintiff received a discharge of all of his debts and his bankruptcy case was closed on May 9, 1997. In the weeks following the discharge of his debts, plaintiff contacted four attorneys with respect to the claims against defendant. On the second or third week of May 1997, plaintiff contacted the attorneys who represented him in the lawsuit against defendant and retained them on May 30, 1997.

The district court noted that plaintiff had incurred most of his debt in 1993 or earlier and questioned why plaintiff waited until 1997 to file his bankruptcy petition considering his substantial amount of debt ($155,000). When questioned about the timing of his bankruptcy petition at his deposition, plaintiff responded he had thought about it for a couple of years but thought he could somehow take care of it and wanted to repay his creditors. The court did not find this testimony credible as plaintiff had stopped making payments to the vast majority of his creditors in 1992 or 1993. Plaintiff also had failed to notify his creditors of a change in his address. Based on plaintiff's deposition testimony, the court found it "doubtful that plaintiff delayed his bankruptcy petition because he was attempting to repay his creditors." *Feist*, 100 F.Supp.2d at 278. The court found

it was "more likely that Plaintiff never previously filed for bankruptcy because he had no assets to protect" and "[w]hen he was injured on August 23, 1995, plaintiff acquired what he believed was a valuable asset– his claim against Defendant." *Id* .

The *Feist* court also questioned the "aggressiveness" with which plaintiff pursued the litigation against defendant immediately after his bankruptcy case was closed. The court noted it raised questions about plaintiff's intent. The court observed that plaintiff had not spoken to a single attorney during the one year and eight months following his injury, yet within a few weeks following the close of his bankruptcy case he had retained counsel and filed a lawsuit. Finally, the court questioned why plaintiff waited until his substantial debts were discharged by the bankruptcy court before he pursued his claim against defendant.

At his first deposition, plaintiff testified that he had not sought legal representation early on because he "didn't want to get involved in the courts or go after anybody." *Id.* 279. At his second deposition, plaintiff testified he did not believe he had a claim against anyone until May 1997, following a conversation he had with his uncle. At an evidentiary hearing, plaintiff elaborated on the events leading up to his decision to seek an attorney. Plaintiff testified that after his worker's compensation carrier scheduled an independent medical examination, he discussed his concerns about his pending medical examination with his uncle. His uncle suggested he call an attorney as he might have a cause of action against the trucking company. The conversation with his uncle led to his decision to interview attorneys.

The district court found it puzzling that plaintiff initially testified he did not want to get involved in the courts or go after anyone. However, after defendant discovered plaintiff had filed a bankruptcy petition, plaintiff testified differently. The court found plaintiff's second deposition testimony and his testimony at the evidentiary hearing not credible. The court questioned why

plaintiff did not provide the information regarding his uncle at the first deposition when he was asked what had led him to interview attorneys.  Based on the evidence presented, the *Feist* court found the timing of plaintiff's actions suspicious and questioned his intentions.  The court further found that "plaintiff ha[d] not sustained his burden of proving that when he filed his action in his own name, he did so in good faith." *Id.* at 278.  Accordingly, the court granted defendant's motion for judgment on the pleadings, denied plaintiff's motion to substitute the trustee as the real party in interest, and dismissed the action with prejudice.

In *Griffin*, 2004 WL 906393, plaintiff filed an action in state court on October 3, 2003, alleging violations of the Family Medical Leave Act (FMLA).  On November 3, 2003, defendants removed the action to federal court and also filed a motion to dismiss for lack of subject matter jurisdiction. Defendants argued plaintiff lacked standing to pursue the claims asserted in the action because plaintiff failed to disclose the claims in her bankruptcy proceeding.  In the motion to dismiss, defendants alleged the following facts: (1) plaintiff was a former employee of the defendant who was terminated on April 29, 2002; (2) on August 8, 2002, plaintiff filed a voluntary petition under Chapter 7 in bankruptcy court; (3) plaintiff failed to list in her schedules any claim of any kind against defendants; (4) on September 10, 2002, plaintiff filed an administrative claim, alleging violations of the FMLA; (5) on October 21, 2002, plaintiff amended her bankruptcy schedules and did not disclose that she had any claim against defendants; and (6) on December 16, 2002, plaintiff received her discharge in bankruptcy on the basis of her estate having no assets.

Plaintiff filed a response to defendants' motion and a motion for stay, seeking leave to reopen her bankruptcy case. On December 11, 2003, the court granted the plaintiff's motion to stay and ordered the action stayed until February 12, 2004.  In its order, the court cautioned plaintiff that it probably would not grant any extensions of the stay.  On February 12, 2004, plaintiff filed her

10

"Notice of Intent and Motion for Authorization to Proceed" and "Ratification of Commencement of Action by Trustee." The Notice of Intent gave notice that plaintiff intended to proceed with her claims in the action and also informed the court that she had filed a motion to reopen her bankruptcy case on January 13, 2004, but that motion was still pending. The ratification advised the court that the trustee ratified commencement of the action by plaintiff and agreed to be bound by the judgment entered in the case. The trustee also advised the court that she consented to plaintiff continuing the prosecution of the case for herself and the estate subject to appropriate orders by the bankruptcy court.

On February 25, 2004, plaintiff filed a "Notice to Court," informing the court that her January 13, 2004 motion to reopen the bankruptcy case had been denied because her bankruptcy attorney failed to appear at the hearing. The notice stated that plaintiff's bankruptcy attorney had not attended the hearing because the attorney assumed the bankruptcy court would just sign the order submitted without hearing. Since the hearing was set for February 18th, a date beyond the court's deadline, he did not attend. The court found this explanation not credible, finding it was "more likely that [the attorney] did not appear for the hearing because he did not wish to stand before the [bankruptcy judge] and explain that he had knowingly omitted plaintiff's FMLA claims from plaintiff's bankruptcy schedules." *Griffin*, 2004 WL 906393 at *2. The court also noted that plaintiff did not dispute any of the facts defendants alleged. In fact, plaintiff admitted she knew of her FMLA claim prior to the time she filed her bankruptcy petition and that she knew the claim should be listed on her schedules. Plaintiff also admitted she informed her bankruptcy attorney of the claim, and it was his decision not to list the claim. Nonetheless, plaintiff asserted her failure to list the claim was "mere inadvertence " and not an attempt to mislead.

11

The *Griffin* court rejected plaintiff's "mere inadvertence" argument and found plaintiff's failure to disclose her FMLA claim on her bankruptcy schedules was "a conscious concealment." *Id.* The court also noted plaintiff could not avoid the consequences of her failure to disclose her claims on her bankruptcy schedules by arguing that she relied on the advice of her bankruptcy counsel. Finally, the court found that even if it were to conclude that substitution of the real party in interest should be allowed, the bankruptcy trustee had made no effort to participate in the prosecution of the action. The court found that, at most, the bankruptcy trustee had acquiesced in prosecution of the action by plaintiff provided the bankruptcy court approved her actions. However, the trustee never sought the bankruptcy court's approval. Accordingly, the court granted defendants' motion to dismiss.

The facts in *Feist* and *Griffin* are distinguishable from the facts in this case. Here, Baca filed her Petition for Bankruptcy prior to the EEOC issuing its "Dismissal and Notice of Rights." Baca contends she did not know she had a claim against Defendants when she filed her petition. Baca argues that when she filed her petition, she may have had "potential claims" but they had not ripened into any cause of action. Baca contention is credible. The EEOC could have found that Baca's facts as alleged in the charge failed to state a claim under any statutes enforced by the EEOC or that Baca's allegations did not involve a disability as defined by the ADA. On December 7, 2009, Baca filed her bankruptcy schedules and attended a 341 Creditor Meeting. At that time, Mr. Mozes had not filed this action. Baca disclosed a 2009 civil case in which she was a party but contends she believed she only had to list claims filed in court. This contention also is credible. Mr. Mozes did not file this action until February 4, 2010. Finally, unlike the plaintiffs in *Feist* and *Griffin*, Baca disclosed her bankruptcy filing and her non-disclosure to Defendants, not to a third party.

In December 2010, during a conversation with Mr. Mozes, Baca mentioned her bankruptcy proceeding. Mr. Mozes counseled Baca to contact Mr. Trammell. Baca contacted Mr. Trammell and he re-opened the bankruptcy in order to amend the schedules to include this action. In March 2, 2011, Mr. Mozes filed an unopposed motion to join the trustee. As a result, it was a relatively short time between Baca's disclosure of her bankruptcy to Mr. Mozes and the filing of the motion to join the trustee.

Defendants have not presented any evidence showing Baca's failure to list her claims against Defendants on her bankruptcy petition and her schedules was a deliberate, tactical maneuver. There is no evidence that Baca intended to mislead anyone or that her failure to disclose was due to an improper motive. There also is no evidence that Baca lied under oath when questioned by the Trustee at the December 7, 2009 Creditor Meeting. In addition, Defendants have not shown any prejudice. Defendants claim they have been prejudiced because they have incurred costs and attorneys' fees defending this matter against a plaintiff that was not the real party in interest. Defendants also claim prejudice because Mr. Mozes represents the trustee which places Defendants in the position of "defending claims by parties with disparate interests." Finally, Defendants contend Baca's claims included attorney's fees whereas the trustee would not have included such fees. Defs.' Mem. Support Mot. at 10 (Doc. No. 52).

First, Defendants would have incurred the same costs and attorneys' fees defending this action if the trustee had originally been named as the real party in interest. Second, Defendants fail to explain why Baca's interests and the trustee's interest are disparate. Moreover, Baca does not oppose substitution of the trustee as the plaintiff in this matter, so this issue is moot. Finally, Defendants failed to cite any legal support for their claim that the trustee is not entitled to attorney fees under the ADA and the FMLA. Attorney fees are monetary claims which become part of the

13

bankruptcy estate. *See* 11 U.S.C. §541(a)(1)(An estate over which the appointed trustee is given control "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case."); *In re Stat-Tech Intern. Corp.*, 47 F.3d 1054, 1057 (10th Cir. 1995) ("Property of the bankruptcy estate includes causes of action belonging to the debtor at the time the case is commenced."). Based on the facts and evidence presented, the Court finds that Baca's failure to disclose her claims against Defendants in her Bankruptcy Petition and schedules was an honest mistake.

Defendants also move the Court to substitute the trustee and dismiss Baca for lack of standing. However, the issue is whether Baca can proceed as the real party in interest, not standing. Standing has to do with whether Baca can show an "injury in fact" traceable to the conduct of defendants and that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992). In this case, Baca is the individual that suffered the injury alleged in the Complaint, and therefore she has standing to sue. The real party in interest principle requires that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P 17(a). Once Baca filed for bankruptcy, her claims against defendants became the property of the bankruptcy estate. *Riggs v. Aetna Life Insurance Co.*, 188 Fed.App'x 659, 663 (10th Cir. 2006). Thus, the trustee, not Baca, is the real party in interest to bring these claims against Defendants. *Id.* Baca does not oppose substitution of the Trustee as the plaintiff in this matter. Pl.'s Resp. at 1 (Doc. No. 57). However, Baca seeks an order preserving "any interests she may have in exemption or surplus amounts through any recovery over and above any amounts to be paid to creditors." Pl.'s Resp. at 10 (Doc. No. 57). Defendants contend that judicial estoppel should prevent Baca from any recovery and oppose her request.

Judicial estoppel is a discretionary remedy courts may invoke "to prevent 'improper use of judicial machinery.'" *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (internal quotation marks omitted). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). *See also Rascon v. U.S. West Commc'ns, Inc.*, 143 F.3d 1324, 1330 (10th Cir. 1998) ("Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation.") (internal quotation and citation omitted). Because the Court concludes that Baca's non-disclosure of her claims against Defendants in her bankruptcy case was due to an honest mistake, judicial estoppel is inapplicable.

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss or for Summary Judgment. However, the Court will grant Defendants' motion to dismiss Baca with prejudice and substitute Mark J. Caplan, Trustee, as the real party in interest. Henceforth, Baca will no longer be a party to this case. From this time forward, the caption of the case will read as follows: *Michael J. Caplan, the Chapter 7 trustee for the Bankruptcy Estate of Anita Baca v. State of New Mexico, Office of the Secretary of State, and Mary Herrera.*

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or for Summary Judgment [Doc. No. 51] is **DENIED.** Michael J. Caplan, Trustee, is substituted for Plaintiff.

_____
**UNITED STATES DISTRICT JUDGE**